## OSBORNE

*v.*

## S. L. DAVIDSON MORTGAGE CO.

BILL OF REVIEW; NEWLY DISCOVERED EVIDENCE; ASSUMPTION
OF MORTGAGE BY SUBSEQUENT PURCHASER.

1. There is no absolute or universal rule governing the introduction of newly discovered evidence under a bill of review, but the allowance if it is not a matter of right in the party, but of sound discretion in the court, to be exercised cautiously and sparingly, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause.

2. While the mere payment of interest upon an incumbrance by a subsequent purchaser is not inconsistent with his not having assumed the payment of the incumbrance, yet where the payment is made under a demand, founded on a legal obligation to pay, never denied, and his intention to assume payment of such incumbrance is corroborated by the recitals of his deed, he will be held to the obligation.

No. 527. Submitted April 9, 1896. Decided May 7, 1896.

HEARING on an appeal by the complainant from a decree dismissing a bill of review. *Affirmed.*

The COURT, in its opinion, stated the case as follows :

This is an appeal from a decree dismissing a bill of review. The decree sought to be reviewed was passed in the Supreme Court of the District of Columbia, January 24, 1894, upon a bill filed therein by the S. L. Davidson Mortgage Company, of Kansas, one of the appellees, against the appellant, Charles B. Osborne.

The allegations of the bill were : That one Nannie E. Royer, now Moore, about January 1, 1889, being indebted to one C. E. Jones, of Wichita, Kansas, as evidenced by her promissory note, conveyed to him, to secure the same, a certain lot in said city ; that said note was, upon valuable consideration, assigned to complainant ; that the said Nannie E. Moore and husband, on March 30, 1889, conveyed the said lot to the said Charles B. Osborne, who assumed, and agreed to pay, the said incumbrance ; that said note, having matured, and being unpaid, the said mortgage company brought suit to foreclose the said mortgage in the District Court of Sedgwick County, Kansas ; that foreclosure was duly had, and the property sold under the decree thereof, for the sum of $50, which left a balance due of about $350, and that demand had been made on said Osborne for payment, and by him refused, etc. The prayers for relief were general and special. The original note, the mortgage and a copy of the deed from Nannie E. Moore and husband to Osborne were filed as exhibits to the bill.

W. C. Stone entered an appearance as solicitor for Osborne, but filed no demurrer, plea or answer ; and on February 18, 1893, a decree *pro confesso* was passed. On July 25, 1893, there was filed a deposition of Douglas S. Mackall, one of the complainant's solicitors, and a certified transcript of the proceedings in the foreclosure suit, with decree therein. The deposition showed that said Mackall had presented the original note and mortgage, with a copy of the deed from Moore and wife to Osborne, which showed that he had assumed said debt, and demanded payment of him ;

that he admitted he was was the grantee in the deed and had accepted it ; that he declined to pay, unless, after consulting counsel, he could see no way to avoid it ; and that he had never paid any part thereof.   On September 21, 1893, the cause was placed on the calendar for the October Term, and on January 24, 1894, final decree was passed establishing a debt of $350.85, and awarding execution. *Fieri facias* was issued and ordered served by the marshal, A. A. Wilson, who is made a party to this action.

The following allegations of the bill of review set forth the grounds upon which relief is prayed :

" Your complainant further charges and avers that soon after the said bill was filed he was informed thereof and duly consulted and retained counsel regarding the same, who advised your complainant from time to time that the said cause was progressing satisfactorily, and that your complainant's rights and defences were being duly protected and presented.   The first knowledge which your complainant had as to the true state of the case and the neglect of his counsel was recently conveyed to your complainant by a letter from the marshal informing your complainant that the marshal held a writ of *fieri facias* against the property of your complainant.   Your complainant at once retained other counsel and caused a careful investigation of the said cause and proceedings to be made, from which it appears, that the counsel originally retained by your complainant in this cause had done absolutely nothing but enter his appearance for your complainant and order a copy of the bill and one of the exhibits, and from that time on has utterly neglected and abandoned the cause ; of all which your complainant had not the least knowledge or information, but, on the contrary, was advised from time to time as aforesaid.

" Your complainant further charges and avers that there was never any knowledge or information on his part of the provision contained in said deed from said Nannie E. Moore and Lowry L. Moore to him, whereby your complainant assumed to pay said mortgage, until after the said bill was

. filed, and said provision was inserted in said deed by the scrivener without the knowledge or direction of either the grantors or grantee therein, and contrary to their contract and agreement concerning the said mortgage. Your complainant was engaged in the grocery and provision business in the city of Washington, District of Columbia, and the said Nannie E. Royer became indebted to him for groceries and provisions and became unable to pay in cash complainant's account against her. She stated to complainant that she had some lots in Wichita, Kansas, which she would convey to him in settlement of his bill, and relying solely upon her representations as to their value and believing that he could not do better, your complainant agreed to accept her interest in the said lots in settlement of her said account. Your complainant had and has never seen the said property and knows nothing of it of his own knowledge. There was no contract, understanding, or agreement of any kind between the said Nannie E. Moore or Lowry L. Moore and your complainant that your complainant should assume to pay the said mortgage on the said lots, but, on the contrary, it was distinctly understood and agreed that your complainant should receive the interest of the said Nannie E. Moore in said lots subject to the said mortgage, but without other or further liability upon his part by reason of said mortgage or other matters, and the said provision was improvidently, improperly, and without any direction, contract, agreement, understanding, or authority, inserted in the said deed by the scrivener thereof, and should be stricken therefrom.

"Your complainant further avers that the said property was conveyed to him by the said Nannie E. Royer by her deed, dated February 7, A. D. 1889, recorded March 22, A. D. 1889, in Liber No. 111, at folio 15, one of the land records for Sedgwick County, Kansas, which said deed contains no reference of any kind to the said mortgage nor any assumption thereof. A true copy of the said deed is hereto annexed as part of this bill of complaint, marked 'Complainant's Exhibit C. B. O., No. 1.'

" Your complainant therefore charges and avers that the said deed of March 30, A. D. 1889, from the said Nannie E. Moore and Lowry L. Moore to him was entirely null and void for the reason above stated ; that the said property had been conveyed to your complainant by the said deed of February 7, A. D. 1889, so that at the time of the execution and delivery of the said deed of March 30, A. D. 1889, no right, title, interest or estate of any kind whatsoever in, to or out of the said property was vested in or held by either the said Nannie E. Moore or Lowry L. Moore by reason of the premises aforesaid.

" Your complainant further charges and avers that since the filing of the original bill of complaint herein he has discovered the said deed of February 7, A. D. 1889, of which he had not theretofore any knowledge, information or belief, as your complainant was always of the impression that the said deed of March 30, A. D. 1889, was the deed by which he acquired title to the said property, and he was not aware until after the filing of the original bill of complaint herein that the said deed of February 7, A. D. 1889, had ever been executed or delivered, or was in existence. Your complainant entrusted the matter entirely to his counsel, and the said deed of February 7, A. D. 1889, has, as aforesaid, been discovered by the said counsel and by him delivered to your complainant, so that by no possibility could your complainant have proven the execution and delivery of the said deed as a defence in the cause in which the said decree was rendered, for, as above set forth, it has only recently come to the knowledge of your complainant that the said deed of February 7, A. D. 1889, had been executed and delivered and that by it, and not by the said deed of March 30, A. D. 1889, the title to the said property passed to your complainant. Your complainant's said solicitor had lost all recollection of said deed of February 7, A. D. 1889." ·

Defendants demurred to the bill, assigning a number of grounds, among which was the omission of an allegation that the money had been paid under the decree, or that

there was some good reason for not doing so. This was overruled, and defendants answered, putting in issue the charges of the bill.

The defendant offered no testimony, and the bill was dismissed on the testimony adduced in support thereof by the appellant.

*Mr. Thomas M. Fields* for the appellant.

*Mr. Henry Wise Garnett* and *Mr. Julius A. Maedel* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

It is not necessary to discuss or decide some of the points that have been argued in respect of the sufficiency of the bill, or of the proper practice in cases of review. Defendant did not stand upon its demurrer, and the case will be considered on the testimony offered by the appellant, assuming its competency in all respects.

It has been said by the Supreme Court of the United States that " there is no universal or absolute rule which prohibits the courts from allowing the introduction of newly discovered evidence under a bill of review, to prove facts which were in issue on the former hearing. ' But the allowance of it is not a matter of right in the party, but of sound discretion in the court, to be exercised cautiously and sparingly, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause.' Such was the language of Mr. Justice STORY in *Wood* v. *Mann*, 2 Sumn. 334; and he states the rule none too strongly." *Craig* v. *Smith*, 100 U. S. 226, 233.

Giving the appellant the benefit of all that his testimony tended to prove, and of every reasonable inference to be deduced therefrom, we think the court did not err in dismissing his bill. No new issue of fact is made that is not embraced in the original bill, and there is no pretence that the appellant was prevented from discovering the facts of his

defence, or from presenting the same, by any fraud practiced or undue advantage taken by or on behalf of the appellee.

The testimony shows that the owner of the lot, who was known as Nannie E. Royer, owed the appellant $235, and upon his discharge thereof, and the payment of $65, made a deed to him therefor. This deed, dated February 7, 1889, was written by Warren C. Stone, the appellant's attorney, and recited a consideration of $500. There was no mention made therein of the mortgage. The deed was sent to Kansas and recorded. Shortly afterwards it was discovered that the grantor was a married woman, and that her husband, one Lowry L. Moore, was living in Indiana. Thereupon another deed to the lot was executed by him and his wife. This deed was dated March 30, 1889, and recites a consideration of one dollar. It then recites the mortgage, and adds : " *Which the party of the second part assumes to pay.*" This deed was not a printed form, with blanks, but was wholly written by said Stone, who had, at the time, a complete abstract of the title that had been sent him by the clerk of the court of Sedgwick County, Kansas. It appears also from the appellant's own testimony that he knew, when the first deed was executed, of the existence of the mortgage. " Miss Royer," or Mrs. Moore, had informed him of it. He denies, however, that he assumed or promised to assume the payment of it. He says that the second deed was delivered to him by Stone, who said it was " all right," and he did not read it. The only excuse for the recital in the deed of the grantee's promise to pay the mortgage, which was also accurately described, is a flimsy one. The attorney says that he had before him the deed to Nannie E. Royer from one Burroughs, which recited a mortgage of $300, which the grantee " assumes and agrees to pay," and that he " inadvertently " followed that recital. It appears from his testimony, however, that when the first deed was made in the name of Royer, he had the Burroughs deed which she presented to him from which to ob-

tain the description of the lot. He says that she then had a description of the mortgage and stipulated that the sale should be made subject thereto. Yet that deed contains no recital of the mortgage, much less a promise to pay it. He says that he kept that deed after having had it recorded, and did not deliver it to the appellant, and that its execution and delivery had been forgotten by him until he accidentally discovered it in a file of papers belonging to another person, after the decree had been entered. Appellant furnished him the money to pay the recording fee of that deed, and later that of the second deed.

He gives no satisfactory account of his neglect to defend this suit, saying that he thought he had filed a demurrer. He says further that he did not know the decree had been entered until informed by Osborne, who, he says, "censured me quite severely for it, and I do not blame him."

At the same time, his conduct in making no defence to the suit is perfectly consistent with the facts as shown by the last deed, which was the effective one to pass the title. Under its recital there was no defence but payment, and of that there was, of course, no pretence. He could not charge fraud in Moore or Royer in procuring the deed to be so written. The most he could say was that it was the result of his own "inadvertence."

That he or his client could, in the short time that intervened, have forgotten the execution, delivery and record of the first deed is incredible, when their evidence is considered apart from all other facts in the case. Much less is it reconcilable with other facts shown. Correspondence between Osborne and Stone and the owners of the note was produced on the hearing. The first letter is under date of May 16, 1889, by C. E. Jones to Osborne, referring to the purchase and the mortgage and offering, for immediate payment, to remit the interest. November 20, 1889, he was informed by letter from the appellee that the note of Royer "assumed by you falls due January 1, 1890. Please make arrangements for prompt payment." The deed from Moore

and wife was not recorded until December, 1889, and it does not appear by what means the holders of the note knew that Osborne had assumed its payment. It does not appear that Osborne or Stone ever denied the statement of the former's promise to pay the mortgage.

December 17, 1889, appellee writes to Stone acknowledging the receipt of the interest to January 1, 1890, amounting to $24. This money was sent by Stone, under date of December 13, in a letter in which he hopes to remit $50 by January 1, and inquiring what amount in cash would purchase the mortgage. There were several other letters, and the last was of date March 31, 1891, by Stone to the appellee, inquiring the amount of interest and taxes due.

It is true, as has been said by the Supreme Court of the United States, that the mere payment of interest upon an incumbrance by a subsequent purchaser, " is not inconsistent with his not having assumed the payment of the incumbrance." A person so situated might well pay interest so long as he might attach any value to his equity of redemption, without having assumed the payment of the principal. *Elliott* v. *Sackett,* 108 U. S. 132, 142.

But that was a very different case from this. Here the payment was made under a demand, founded on a legal obligation to pay, that was not once denied. And we must regard it and the correspondence concerning it as circumstances tending strongly to corroborate the recitals of the deed, which was prepared not by the grantor or her attorney, but by the attorney of the grantee.

We would set a very dangerous precedent were we to hold that solemn deeds and decrees of courts could be vacated upon such testimony as this record furnishes.

The decree must be affirmed, with costs to the appellees ; and it is so ordered.

*Decree affirmed, with costs.*